Good morning, Your Honors, and may it please the Court, my name is Howard Bashman and I represent the plaintiff-appellant John M. Floyd & Associates Inc. With the Court's permission, I'd like to reserve two minutes for rebuttal and I'll keep an eye on the clock. All right, thank you. Floyd is a leading consultant to banks and credit unions, providing profitability recommendations and advice. In this breach of contract action, Floyd sued First Imperial because the credit union, after entering into a contract with Floyd and receiving Floyd's recommendations, implemented at least six of those recommendations using a competing consultant called SmartStep. In the district court's view, if two different consultants make the same recommendation, then the credit union is only installing the recommendations of the consultant who made the recommendations most recently. As the Third Circuit recognized applying nearly identical contractual language in the Ocean City Bank case, Floyd's contract requires that Floyd be compensated if a bank installs a different vendor's identical recommendations, no matter if Floyd's recommendations are proprietary or obvious or necessary to the accomplishment of the task. Floyd made recommendations. First Imperial installed the recommendations within the time period provided under the contract. What time period was that? Like how long is this agreement supposed to apply? The agreement specifies that it applies for two years after the tracking period, which is a three-year period. So once recommendations are installed, if any of Floyd's recommendations are installed in the five-year period that follows, compensation would be owed to Floyd. In this instance, the bank waited until late 2012 or early 2013 to implement these recommendations. The contract that First Imperial signed with Floyd was entered into in 2008. So that's the time frame here. So what evidence is there that First Imperial actually implemented your client's recommendations? The evidence that we rely upon principally is the declaration of Mr. John M. Floyd himself, which is contained in the record excerpts at page 187. Counsel, I thought you conceded below that you would not be able to prove that the defendant actually implemented your client's recommendations. You seem to rely on a concept of functional equivalence. Again, you seem to concede that if you actually had to prove that they had implemented the recommendations of your recommendations, you would not be able to do that. No, with all due respect, Judge Lopez, the concession that was made, if it was even a concession, what ‑‑ Well, there was a concession, so tell us what you conceded. What the counsel said in the argument of the summary judgment motion was that First Imperial had installed the Smart Step system rather than Floyd's system, but there was no concession made that the Smart Step system did not include identical recommendations. And that gets to the heart of your argument. As I read this contract, it was we will recommend parts of the Smart Step system to you, and if you accept our recommendations to install those parts of the Smart Step system, you will compensate us. I don't read the contract, so I want you to help me with this, as saying I recommend to you that you get a program that does the following. And we have one. It's the Smart Step program that does the following. And the bank then goes out and says, oh, that's nice. Other vendor, do you have a program that does that? And they say yes and said we'll buy from you instead. So tell me how ‑‑ aren't the recommendations here that were made to install your client's programs as opposed to a program that functionally did the same thing? Just to clear up any misunderstanding, Smart Step is the competing vendor with ‑‑ Right, right. I'm sorry. You're right. You're right. I misspoke. The client has its system. Too many vendors. That's okay. You're Floyd. Floyd has its system. Right. It consists of specific recommendations. Right. Specific recommendations were, without regard to whether I named the correct party, was to install various parts of your client's system, were they not? That is not correct. Parts of it were, but parts of it were general recommendations of how to accomplish the task. Right, but the problem with general recommendations for parts of the task is how do you compensate somebody for general recommendations? They have to do something, don't they? Right. This is, in fact, what First Imperial is arguing, that any vendor that's going to advise a bank or a credit union on how to install an overdraft privilege program will contain certain things in common. And as the Third Circuit recognized in that Ocean City Bank case ‑‑ Well, it's an unpublished disposition, which the Third Circuit wouldn't be required to follow if you were there. Right. And, of course, this Court wouldn't be required to follow it even if it was published. So let me just give you the hypothetical that bothers me. Your client, Floyd, goes to the bank, Imperial Credit Union, and says you should have an overdraft protection program, and we got one. Take a look at it. It's a great program. And they look at it and say, you know, we do need a program. But Smart Step has called us. They want to see us too. And they come in and they say, we have an overdraft protection program. They're not stealing yours. They have one of their own. And we choose to buy that one. Breach of contract? Not if First Imperial had not entered into the contract. No, no. First Imperial has entered into exactly the contract we have here. And what you're saying is once you make a recommendation, they are not free to seek a similar product from anybody else. That's not our position. Yeah, I think it is. Our position is that once you sign the contract and install our recommendations using us or somebody else. No, they didn't install your program. They installed a program from somebody else. Your recommendation was that they get a program to do the following. And I've got one. So please take it. And they say, they don't like yours. We like his. You're saying under those circumstances, that's a breach of contract. The contract talks about recommendations. Yes? Is that a breach of contract? Yes. Okay. And the contract speaks of recommendations, not a program or a system. But weren't the recommendations to install your products? That was among the recommendations, correct. But that's too high of a level of generality. Well, with respect to the thing that they bought from SmartStep, that was a product, wasn't it? That was a series of recommendations as well. Didn't they buy a product from SmartStep? This is not a computer program that somebody installs and it runs by itself. Right. This is a series of advice and recommendations. They bought a package from SmartStep that they could have bought from you, correct? Right. That they did agree to buy from us. You recommended that they buy a package that accomplishes a purpose. Right. And they went to somebody else and bought a package that accomplishes a purpose. Correct. And your view is that your recommendation should be construed as only installing a package that accomplishes a purpose. It wasn't to install your package. The specific language of the contract that we rely upon is that if a recommendation that we made is ultimately installed, and this is Record Act 621, it doesn't matter if you do it using us or by yourself or using another party. No, you seem to be arguing for a kind of exclusivity provision, which is not reflected in this contract. In other words, you seem to be saying that once the bank had entered into these negotiations with you, once the bank had gone so far as to have your client's program installed, and it was installed, although it never became operational, that they are not permitted to deal with another vendor to achieve the same purpose that was contemplated by their program for at least that five-year period that you're talking about. They can only deal exclusively with you if they wanted to implement a program that your client was providing. But that's not what this says. Our position is not that we have an exclusive arrangement. I see I'm about to run out of time, but rather even under this, even if the contract is enforced, the bank still would be recovering more than 40% of profit that it otherwise was not realizing after paying both vendors. If I can just reserve the rest of my time. We'll give you some extra time, but did your client receive any payments under this agreement? It received an initial payment, which the contract provides for, for out-of-pocket expenses in doing the research that was required to make the proposal. Does it make any difference under this contract what the reason was that they didn't continue working with you and went to a different company? Just to use an example from that Ocean City Bank case, there the bank was arguing that our program would not have worked on its system. If that were true, then I think that there would have been not an effective contract. But here, as you see from the facts, the reason that First Imperial went somewhere else was because it got a better financial deal from the second vendor. And I know you're over the time, but that doesn't bother me. It should bother you, but it doesn't bother me. What you're really saying is that this is a consulting contract. It 100% is a consulting contract. And that when we offer you advice, if you take the advice, you need to pay us. Right, as long as it's covered in the time frame that applies under the contract. Right, and that's how you read this contract. But, counsel, if it's a consulting contract, you're usually paid for the consulting work. Your client made a business decision to enter into what's essentially a contingency contract. That's true. And that's, maybe they have to live with the consequences of that business decision. Well, we believe that the contingency was triggered once First Imperial decided to install the system, which reflected our recommendations using other vendors. Within that period of time contemplated by the contract, which is the three years plus. Right. So, so if they had waited one more year, they wouldn't have owed you anything under your contract. If, if they had, this, the way the time period here works, as I understand it, is that it's triggered by the installation of our, of any one of our recommendations. And, and so, but it's not true. It's triggered by the, the payment is triggered by having the program operational for 90 days, not a recommendation, but a program. Well, the, the system would be operational for 90 days. And then, and then, well, but what, what do you do with the language in the contract? It says program. Okay. Maybe think of it. Judge Wardlaw said she'd give you a minute later. Maybe you can think about it. On page, on page 621 of the record excerpts. What it says is that fees to John M Floyd and associates will commence following the first four months after 90 days after the installation of recommendations. So, so I know you're understanding it says program, but on record, it says, well, I'm looking, it says FCI, you will have the program operational for 90 days prior to JMFA billing after the recommendations have been installed and monitored for 90 days. But it seems to me when you read those two sentences together, recommendations refers back to program. The program certainly does consist of recommendations. And, and it's the use of those recommendations that triggers the payment obligation on page 621 of the record excerpts. Thank you. Your honors. Thank you. Counsel. Good morning, your honors Matt Kleiner on behalf of first imperial credit union, the district court correctly granted summary judgment as to the breach of contract cause of action because JMFA admitted that it has no evidence that the credit union installed or installed as modified any recommendation that they made in conjunction with their ODP program. Could you deal with the third circuit case? Is it identical in its facts? No, it's not your honor that the ocean, the ocean bank case ocean city case. That is a situation where the, the bank similar contract type of arrangement that was entered into, but the bank in that situation had initially admitted in its answer that it had adopted some of his recommendations. And it went to a summary judgment stage where the expert for the, the bank never disputed that there were recommendations that were well, but you see, he's saying your friend is saying we made a recommendation. Our recommendation wasn't simply by our program. I'm not sure I understand the distinction, but let me do recommendation was that you get an overdraft program and we have a terrific one. And you said, fine overdraft program seemed like a good thing. I'll go look, go to your competitor and buy one. And so you did put it in the program. It just wasn't their program. Does that trigger obligations under the contract? No, the contract is specific that you have to install the specific recommendations or modify the specific recommendations. There has not been any evidence presented before the district court before this court that, that what was the precise recommendation that was actually offered and installed by smart step. So if, if as your, as your friend says, the recommendation was, I'm making up a new recommendation. I know it's not in the record. I recommend you get an overdraft program end of recommendation. And then you go buy an overdraft program from somebody else. Do you owe them money? No, I don't believe something that, that is so general and specific and, and, and vague in terms of the actual recommendation. So you think this contract means recommendations of a specific program designed by Floyd? Absolutely. Your honor, there's no name. I didn't. Give me an example of a specific recommendation that was for the overdraft plan that was recommended by Floyd and given to your client. We, in exhibit 21 of our motion for summary judgment, which let me find the page reference for you. It's six excerpts of record five 22 through five 23. We went through recommendation by recommendation and set forth what the smart set program offered and compare that to the, the John Floyd program. And that was something that we offered in support of our summary judgment to show that there isn't any recommendation that was stalled or modified as installed. There was no response to that exhibit. There was nothing put forth in the opposition saying, well, wait a minute, we, we enacted, you know, specific recommendation 2.01, which says X and you did the exact same thing. But they did say that the program you installed was functionally equivalent to one of the ones they had recommended. That is their argument. And I don't know whether they presented evidence to that effect, but let's assume that there was evidence that there was functional equivalence. Would, why doesn't that breach the contract? Because the, when you look to the specific terms of the contract, as we're required to do to read within the four corners of the complaint, the contract says that the, um, the contract has to, the recommendation has to be installed or modified as installed. The council weren't, I thought as a factual matter, their recommendations were installed. They never became operational. It was never implemented. So that you had in place a working overdraft protection program. But I thought the record indicates that the recommendations were installed and the contract language does speak of installation. It doesn't talk about becoming, that the recommendations once installed become operational. Specific language is installation. Is it not? It is specific recommendation. It is installation. And there was a laptop computer. And as a factual matter, is it not so that the recommendations were installed so that they were ready to go? If the system had ever become operational. They were installed. Were they not? There was a, the recommendations were provided. And then there was a part of the recommendations was to use this program, which was installed and put onto a laptop, which was never used, um, um, by, by the credit union. Why isn't installation the triggering event under the terms of the contract? The, the installation, uh, is the triggering event in terms of, I mean, frankly, you could argue in terms of timing and going to, to your question, Your Honor, as to the timing. If that is the actual point of installation, then, um, the timing starts to run as to any, um, any monies that would be owed there. And as we put together in our motion for summary judgment, that would be 2009, 2010, 2011, when the bank didn't have any type of ODP program. So that would, you know, if that's the interpretation of that, it's when the installation is, is when that program is installed on the computer, then this three-year period has lapsed. But that's not what the district court said. No, no, Your Honor. So why, why doesn't, under the language of the contract, once you have, once they're installed and monitored for 90 days, um, why don't you, at that point, aren't they entitled, if there is increased revenue, uh, to a contingency fee? We, we would say if, again, if that's the case, then that there wouldn't have been any fees that would have been incurred. The district court found that you have to look, not just to the, the installation of this program, but does the installation of these recommendations match the, the, the recommendations of Smart Step? So, Well, but did you, did you, uh, Floyd, you mean? I'm sorry, go ahead. You, you made the same mistake I did. No, no, I, I mean, I mean that, so your point is, is that there's these recommendations and, and, uh, program that was installed on the computer, um, at first, um, at the credit union, those recommendations and installation in order for them to have, they have to be Floyd's, they have to be Floyd's, the same identical provisions installed or as modified. So to get back to Judge, to Judge Lopez's question, did you ever install any of Floyd's recommendations? No, Your Honor, that's not, there's no evidence that they did. And in fact, going back to the concession in the, um, at the hearing on the motion for summary judgment, uh, we cited the full, um, back and forth between the court and plaintiff's counsel. And that's, that was the concession. We agree. You never actually, you never actually installed any of our programs. You may have followed our recommendation, but you didn't install our programs. That's correct. And said that they could not prove, and this is key. They could not prove that the credit union actually used our program per se. Well, is there a distinct, I, my understanding is they were, the program was installed, but it didn't become operational and it's becoming operational and being in effect for 90 days. The triggers requirement that a fee is paid. That's the position that the, um, plaintiff is taking. And so that's why they're trying to delay the, the time period, uh, in which this program is operational, because then the ODP program went into 2012 by smart step. So they're trying to kind of argue it both ways. So they're trying to say that we installed these recommendations back in 2008 and they were ready to go. But if that's true, then the time period runs from there. And that would be the three years. There was no profit. So they wouldn't be entitled to anything. On the other hand, if they installed it, um, truly installed it, a recommendation when they instituted the smart step program, um, then they're, they're trying to, to argue that that would somehow, um, uh, create penalties for that. But you have to look at what the specific recommendations were in smart step. And they've never done that. They've never compared their recommendations to smart steps, recommendations to show that smart step, in fact, installed one of their recommendations. One of my problems with this contract is the use of the word installed. One, if you come to me and say, you know, judge, I recommend you get a better barber and I do. One wouldn't have think that I've installed your recommendation. One would think I had followed your recommendation. So the installed to me suggests a program, a computer program, something physical. Um, it, so it's not just that you followed the recommendation of Floyd in this case, even if you did, um, don't you, under your view, do you have to also install the stuff they tell you to install? Yes, you have to install it. And it's not just a manual process. There's automation to it. Like, as we said, there was this program that was installed and never used on this laptop. Um, so it was never, um, offered up to go operational, but there would have to be something that would be installed and then all the recommendations need to be followed because it's a, you know, ultimately it's a, there's a computerized process. You know, notices are going to be triggered to be sent out every time. What would be installed? The computer program? No, I, I would interpret it as being that the entire, the whole package, the whole package needs to be being their recommendations, including what was put on the computer. So it was on the computer. It was just one aspect of their recommendations, but there are other, other aspects of their recommendations. How would you install the other aspects of their recommendation? I guess it goes to the problem that this contract is, is confusing. Well, if it is, if it is, you shouldn't get summary judgment. Yeah. Cause that one email says, can you go ahead and create a data file in the JMFA format? So it seems like you've got, this is in 2012. And it seems like they've got some programs still from JM, your client from JMFA. And they're asking smart step to create something that goes into that program. And I don't, you know, obviously this looks like a computer program to me, but you're referencing the email, which is a file format. And that's essentially something that the, the credit union created for purposes of keeping track of information found in that spreadsheet. So that's not part of the program that's being installed. And, and again, that, that particular email in that format is nothing. The plaintiff has not made any contention that that form or that format or anything in that form is part of their recommendations that were again, installed or not installed as it relates to this, this contract. All right. Thank you. Counsel. Okay. I'll give your opposing counsel. Thank you, your honor. Another minute. It's very briefly, your honors, the six recommendations that first Imperial installed of John Floyd, when it put in place, the smart step system are listed in John Floyd's declaration founded page one, 87 of the record excerpts that the court can see what those are. And, and we hear again and again, that, that somehow Floyd conceded that there were no recommendations of Floyd. That's a first Imperial installed. What do you do with the language in the contract? It says, our objective is to install. What's the name of it? Your program, your trademark program, the JMFA overdraft program with a little R around it. And it keeps reserving later to installation of the program. This doesn't sound like a consulting contract that says, we'll give you advice about what to do. And if you follow it, you'll pay us. It sounds like a contract to install your program. Of course, program is a word that has many meanings that the one that maybe is most common today when we think of a computer program, but, but here it has the other meaning, which is a series of recommendations that also includes some software. And, and so the contract, and of course this is a contract from 2008, maybe when program was, was not, did not entail the same meaning that it has today. And, and so when it was using the contract, it was used in that way to mean a series of recommendations and some computer software. Counselor, just very quickly, do you, do you acknowledge that the program that became operational here was the smart step program and not the Floyd program? Correct. But, but nevertheless, if it doesn't, the, the contingency provision, which provides for compensation for your clients specifically talks about a program that has become operational for 90 days. And then the fee calculation begins. So if it's the smart step program that became operational, how, how can you argue that it's your client's program that triggered the specifics of the contingency fee provision? The, the specific provision entitling us to compensation, which I know was quoted twice in our opening brief reads, if a recommendation is not installed, it will not be included in the fee calculation. However, if any recommendation within 24 months of the end of the tracking period is installed or installed as modified. Yeah, but, but what do you do with the other part? What do you do with the other part that I read to you before it said, we'll have the program operational for 90 days prior to billing. I mean, it seems to me the recommendation here is for the program, not just the rec, not a rec, not, not divorced from the program. The contract contains two alternative provisions governing compensation to my client. One is if the credit union installs what we're recommending. And the other is if they say, no, thank you. And then they go and do it either on their own or using someone else. And so here we're relying on that second provision, which is separate. Thank you. Your honors. Thank you. Counsel Floyd versus first Imperial credit union is.
judges: Lipez, Wardlaw, Hurwitz